IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION


CARLTON AARON MOSELEY,            :

            Petitioner,           :
                                        CRIMINAL NO. 07-00148-WS-M
vs.                               :     CIVIL ACTION NO.10-00073-WS

UNITED STATES OF AMERICA,         :

            Respondent.           :


<u>REPORT AND RECOMMENDATION</u>


        Pending before the Court is Petitioner's Motion to Vacate, Set

Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 142, 143),

Respondent's Opposition to the Motion to Vacate (Doc. 147), and

Petitioner's Reply thereto.  (Doc. 148).  This action was referred

to the undersigned Magistrate Judge for report and recommendation

pursuant to 28 U.S.C. § 636(b) and Rule 8(b) of the Rules Governing

Section 2255 Cases.  It is now ready for consideration.[1]  Having

conducted an evidentiary hearing on November 30, 2010, and having

carefully reviewed the record, it is recommended that Petitioner's

_____

[1] The Honorable United States District Judge William H. Steele
presided over the guilty plea proceedings in this action and imposed
the challenged sentence.  On February 12, 2010, Judge Steele referred
the matter to the undersigned Magistrate Judge for entry of a Report
and Recommendation.  The undersigned has reviewed the Petitioner's
motion and related documents, the transcripts of the guilty plea
and sentencing hearings, and all other relevant documents in the
Court's file and has fully familiarized himself with the proceedings
before Judge Steele.  Based upon that review and the evidence
presented at the evidentiary hearing conducted on November 30, 2010,
the undersigned makes the following report and recommendation.

Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Docs. 142, 143) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner Carlton Aaron Moseley.

## I. BACKGROUND

On May 24, 2007, Petitioner was indicted for violating 21 U.S.C. § 846, conspiracy to possess with intent to distribute more than five kilograms of cocaine (Count One); 21 U.S.C. § 841(a)(1), possession with intent to distribute approximately 508 grams of cocaine (Count Eleven); and 21 U.S.C. § 853, criminal forfeiture (Count Twelve). (Doc. 1 at 1, 6, 8). These indictments followed Petitioner's arrest on February 23, 2007, for selling approximately 508 grams of cocaine to an individual who was working as a confidential informant for the police. (Doc. 93 at 4, 10-11). On July 18, 2007, the Court ordered Federal Public Defender Fred Tiemann to represent Petitioner. (Doc. 55). Federal Public Defender Carlos Williams stood in for Fred Tiemann at the initial appearance and arraignment on that date, and Petitioner pled not guilty. (Docs. 56, 57). Williams filed a Notice of Appearance as counsel of record for Petitioner on July 31, 2007. (Doc. 66).

On August 16, 2007, Petitioner pled guilty, without the benefit of a plea agreement, to Count One of the indictment charging a violation of 21 U.S.C. § 846, conspiracy to possess with intent to distribute cocaine, and Count Eleven charging a violation of 21 U.S.C. § 841(a)(1), possession with intent to distribute cocaine. (Doc.

73 at 1).  Petitioner was represented at the plea hearing by Federal Public Defender Peter Madden.  (Id.).

Subsequent to his guilty plea, on or about April 16, 2008, Petitioner entered into a "Cooperation Agreement" with the Government in which he admitted that he was guilty of the offenses for which he had pled guilty and that he was accountable for 104 kilograms of cocaine and for a firearm which was the subject of a sentencing enhancement under § 2D1.1(b)(1) of the United States Sentencing Guidelines ("U.S.S.G.").  (Doc. 115, att. 1 at 4).  Petitioner also agreed to cooperate with the Government in an effort to provide substantial assistance in other criminal cases in exchange for the Government's agreement to seek a downward departure under Rule 35 of the Federal Rules of Criminal Procedure or U.S.S.G. § 5K1.1 in the event that substantial assistance was provided.  (Id. at 6-7).  Petitioner waived the right to appeal his sentence or to collaterally challenge his conviction or sentence under § 2255, except as to punishment imposed in excess of the statutory maximum or as to a future retroactive amendment to the sentencing guidelines that affected Petitioner's sentence.  (Id. at 7-8).

Thereafter, on January 28, 2009, the Court conducted a sentencing hearing which was attended by Petitioner and his counsel, Carlos Williams.  (Doc. 141 at 1).  The Court sentenced Petitioner to 235 months as to each of Counts One and Eleven to run concurrently, five years of supervised release, and a special assessment of $100 on each count.  (Id. at 14-15).  The Court dismissed the forfeiture

count (Count Twelve) on the Government's motion.  (<u>Id.</u> at 15).

On February 12, 2010, Petitioner filed his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255, in which he raised the following five claims: (1)ineffective assistance of counsel in failing to file a direct appeal as instructed; (2) ineffective assistance of counsel in failing to object to drug quantity; (3) ineffective assistance of counsel in failing to conduct sufficient discovery before the guilty plea and for advising petitioner to plead guilty, thereby rendering the guilty plea involuntary and unknowing; (4) ineffective assistance of counsel in failing to object to a two-level increase based on a co-defendant's possession of a firearm; and (5) ineffective assistance of counsel in advising Petitioner to sign a Cooperation Agreement and bad faith by the Government, rendering the Cooperation Agreement involuntary and unknowing.[2]  (Doc. 142, 143).  On April 14, 2010, Respondent filed its opposition to Petitioner's Motion to Vacate, arguing that Claims Two and Four are waived by the Cooperation Agreement and that, in any event, all of Petitioner's claims are without merit.  (Doc. 147 at 1, 7).  Petitioner filed a reply to the Government's opposition on May 6, 2010, reasserting the merits of his claims.  (Doc. 148).  The Court now considers each of Petitioner's claims.[3]

---

[2] Petitioner's Claim Five is not included in the Motion to Vacate but is raised in Petitioner's Brief in Support of the Motion to Vacate. (Doc. 143 at 11).

[3] For clarity, the Court will address Petitioner's claims in the following order: Claims One, Three, Five, Two, and Four.

4

A. Ineffective Assistance of Counsel in Failing to File a Direct
   Appeal as Instructed (Claim One).

Petitioner argues in his Motion to Vacate, Set Aside, or Correct
Sentence under 28 U.S.C. § 2255 that his counsel was ineffective
for failing to file a notice of appeal of his sentence as instructed
(Claim One). (Doc. 142 at 4). According to Petitioner, "*several
days after sentencing* but before the filing of the judgment [he]
requested counsel to file an appeal of the sentence[.]" (Doc. 143
at 4)(emphasis added). He "specifically requested counsel to file
an appeal of his lengthy 235 months sentence based on drug quantity
and other errors the petitioner at the time knew had merit." (Id.
at 5). "Counsel never filed the notice and never consulted with
the petitioner regarding his professional judgment in not filing
a notice of appeal. . . ." (Id.). Had counsel consulted with
Petitioner and informed him that he was not going to file the notice
of appeal as instructed, Petitioner would have filed it himself.
(Id. at 5-6).

In Strickland v. Washington, 466 U.S. 668 (1984), the Supreme
Court held that criminal defendants have a Sixth Amendment right
to "reasonably effective" legal assistance. Id. at 687. The court
announced the now-familiar test: a defendant claiming ineffective
assistance of counsel must show (1) "that counsel's representation
fell below an objective standard of reasonableness," id. at 688,
and (2) that counsel's deficient performance prejudiced the

5

defendant. <u>Id.</u> at 687. "[T]his test applies to claims, like [Petitioner's] that counsel was constitutionally ineffective for failing to file a notice of appeal." <u>Roe v. Flores-Ortega</u>, 528 U.S. 470, 477 (2000).

In <u>Flores-Ortega</u>, the Supreme Court stated:

> We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. <u>See Rodriquez v. United States</u>, 395 U.S. 327, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969); <u>cf.</u> <u>Peguero v. United States</u>, 526 U.S. 23, 28, 119 S. Ct. 961, 143 L. Ed. 2d 18 (1999) ("[W]hen counsel fails to file a requested appeal, a defendant is entitled to [a new] appeal without showing that his appeal would likely have had merit").

<u>Flores-Ortega</u>, 528 U.S. at 477. In such instances, "prejudice is presumed." <u>Gomez-Diaz v. United States</u>, 433 F.3d 788, 792 (11th Cir. 2005). Even in instances in which no request to appeal is made, counsel is obligated to consult with his client when there is reason to think either that "a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal)," or that the defendant "reasonably demonstrated to counsel that he was interested in appealing." <u>Flores-Ortega</u>, 528 U.S. at 480.

> To satisfy the consultation obligation when it arises, counsel must "advis[e] the defendant about the advantages and disadvantages of taking an appeal and mak[e] a reasonable effort to discover the defendant's wishes." <u>Id.</u> at 478. If counsel has a duty to consult but fails to satisfy it, his deficient performance is established, and the defendant establishes resulting prejudice by showing that, but for counsel's failure to consult, he would have

6

appealed.  Gomez-Diaz, 433 F.3d at 792.

> Relevant factors in determining if a
> rational defendant would want to appeal include:
> (1) "whether the conviction follows a guilty
> plea"; (2) "whether the defendant received the
> sentence he bargained for"; (3) "whether the
> plea [agreement] expressly . . . waived some
> or all appeal rights"; and (4) whether there
> are "nonfrivolous grounds for appeal." Otero
> v. United States, 499 F.3d 1267, 1270-71 (11th
> Cir. 2007) (internal quotes omitted).

Gavin v. U.S., 2009 WL 692046, *1-2 (S.D. Ala. 2009).

In response to Petitioner's claim, the Government submitted the affidavit of Petitioner's counsel, Carlos Williams, who denied that Petitioner ever asked him to appeal.  (Doc. 147, att. 2 at 1-2). According to Williams, Petitioner's potential exposure at sentencing included substantial relevant conduct evidence and a statutory sentencing enhancement carrying a mandatory minimum sentence of twenty years under Count One and ten years under Count Eleven; therefore, Petitioner opted to cooperate with the Government, which included waiving his right to appeal, with the hope of receiving a reduction in his sentence.  (Id.).

On November 30, 2010, the Court conducted an evidentiary hearing to resolve the conflict in the evidence regarding Petitioner's purported instructions to Williams to file a notice of appeal.  At the evidentiary hearing, Petitioner acknowledged that he had been caught "red-handed" and that it was in his best interest to cooperate with the Government and get the best sentence that he could. Petitioner further acknowledged that he had signed a Cooperation

Agreement with the Government, waiving his right to appeal and securing the opportunity to seek a reduction in his sentence if he provided substantial assistance to the Government. Petitioner testified that Williams had obtained several extensions on his sentencing date in order to give him an opportunity to cooperate. Petitioner insisted, however, that, *at the conclusion of his sentencing hearing*, he told Williams that he needed him to file an appeal of the 235-month sentence. According to Petitioner, he made this statement to Williams just before the U.S. Marshals escorted him out of the courtroom. He reiterated that, if he had known that Williams was not going to file the notice of appeal, he would have filed it himself.

Williams testified to a different set of facts. Setting forth his background, Williams testified that he had practiced law since 1982, had practiced criminal law since 1985, and had been in charge of the Federal Public Defenders Office since approximately 1998. Williams stated that he remembered representing Petitioner after Petitioner was caught delivering cocaine during a drug deal and was arrested on the scene.

Williams testified that he discussed with Petitioner the fact that the Government had filed a notice pursuant to 21 U.S.C. §§ 841 and 851, which had the effect of raising the statutory minimum to twenty years on Count One and ten years on Count Eleven, based on Petitioner's prior criminal history. Given the overwhelming evidence against Petitioner and the statutory minimum sentencing

8

enhancement, they decided to cooperate with the Government to see if they could get Petitioner a lower sentence. Thereafter, Petitioner entered into a Cooperation Agreement with the Government, which included a waiver of his right to appeal. Williams testified that he explained the Cooperation Agreement and the appeal waiver to Petitioner. Both before and after sentencing, the Government interviewed Petitioner; however, nothing developed from the information that Petitioner gave the Government.

Williams testified that he did not recall Petitioner instructing him to file a notice of appeal, nor did Petitioner mention anything about the appeal after sentencing when Williams met with Petitioner and an Assistant United States Attorney in the Monroe County jail as part of their continuing efforts to cooperate. To the contrary, Williams testified that filing a notice of appeal would have been counter to Petitioner's agreement with the Government to cooperate. He explained that the United States Attorneys Office will not agree to cooperate with a defendant and then allow the defendant to appeal. The defendant is forced to make a choice between appealing and seeking a reduction in his sentence through cooperation. According to Williams, if Petitioner had filed an appeal, the cooperation would have ended, and Petitioner understood this. Even so, Williams testified that Petitioner had an unqualified right to appeal and that, if Petitioner had asked him to appeal, he would have done so.

While the accounts given by Petitioner and his counsel at the evidentiary hearing concerning Petitioner's instructions to file

a notice of appeal are materially conflicting, the Court has had a full opportunity to observe their demeanor and to make necessary credibility determinations. Having done so and having reviewed all other relevant portions of the court file, the Court credits counsel's account and discredits Petitioner's version.

Significantly, as set forth above, Petitioner maintains in his Motion to Vacate that, "*several days* after sentencing," he instructed Williams to file a notice of appeal. (Doc. 143 at 4) (emphasis added). At the evidentiary hearing, however, Petitioner insisted that he gave this instruction to Williams immediately following his sentencing, just before the U.S. Marshals escorted him from the courtroom. Petitioner's accounts of the time and place of his instructions to counsel to file a notice of appeal are crucial and irreconcilable.

On the other hand, Williams' account that Petitioner never instructed him to file a notice of appeal is entirely consistent with the following undisputed facts: (1) Petitioner pled guilty to Counts One and Eleven and, thus, was facing a minimum of twenty years in prison on Count One alone; (2) Petitioner signed a Cooperation Agreement with the Government which gave him the opportunity to seek a sentence reduction by providing substantial assistance on other criminal cases; (3) Petitioner agreed in the Cooperation Agreement to waive his right to appeal; (4) the United States Attorneys Office had a policy of discontinuing cooperation with any defendant who reneged on the Cooperation Agreement and filed a notice of appeal;

(5) prior to and following his sentencing, Petitioner and his counsel met with the Government as part of their continuing efforts to cooperate to obtain a reduction in Petitioner's sentence; (6) Petitioner received a sentence that was less than the twenty-year mandatory minimum that he faced on Count One alone; and (7) at a post-sentencing cooperation meeting in the Monroe County jail, Petitioner never mentioned the subject of appeal to Williams.  All of these factors indicate that Petitioner was resolute in his commitment to forego his right to appeal in order to have the chance to reduce his sentence through cooperation with the Government.

In light of the foregoing, the Court finds, based on credibility determinations made during the evidentiary hearing, that Petitioner did not instruct his counsel to file a notice of appeal; Petitioner did not demonstrate to counsel that he wanted to appeal; and there was no reason for counsel to think that Petitioner or any rational defendant would want to appeal under the circumstances.  The evidence presented by the parties does not support a finding of ineffective assistance of counsel.  It indicates only that Petitioner took a reasoned, calculated risk to forego his appeal, based on sound advice of counsel, that did not pay off as he and his counsel had hoped. The Court finds that counsel satisfied his obligations under Roe v. Flores-Ortega, 528 U.S. 470, 476 77 (2000).  Accordingly, Petitioner's habeas Claim One is due to be denied.

B. Ineffective Assistance of Counsel in Failing to Conduct Sufficient Discovery before the Guilty Plea and for Advising Petitioner to Plead Guilty, Thereby Rendering the Guilty Plea

11

<u>Involuntary and Unknowing (Claim Three)</u>.

Petitioner argues in Claim Three of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that his counsel was ineffective for failing to conduct sufficient discovery before the guilty plea and for advising Petitioner to plead guilty. In addition, Petitioner claims that this ineffectiveness rendered his guilty plea involuntary and unknowing. Petitioner's claim fails in each of these respects.

### 1. <u>Ineffective Assistance of Counsel in Failing to Conduct Sufficient Discovery Prior to the Guilty Plea</u>.

According to Petitioner, at all times prior to his guilty plea on August 16, 2007, he believed that he was being charged with conspiracy to possess with intent to distribute "six kilograms of cocaine and several ounces of crack based on the statement of Ricky Hale" and possession with intent to distribute approximately half of a kilogram of cocaine. (Doc. 143 at 2, 6). Petitioner states that: "[i]t was not until the petitioner was provided the final PSI that the petitioner learned that he was being held accountable for over 100 kilograms [of cocaine]" based primarily on relevant conduct evidence obtained from the statement of another drug dealer, Carmese King. (<u>Id.</u> at 2-3).

Petitioner further claims: "[t]here is no way that counsel Carlos Williams could have conducted any meaningful discovery in the nineteen days from arraignment to the time the petitioner entered a plea of guilty to fully comprehend the government's case and be

12

able to intelligently advise the petitioner." (_Id._ at 3).
Petitioner argues that, if his counsel had discovered and informed
him that the drug quantity for which he would be held accountable
was in excess of 100 kilograms of cocaine, as opposed to the six
kilograms of which he was aware, he would not have pled guilty but
would have gone to trial and made the Government prove the drug
quantity. (_Id._ at 4).

In his affidavit, Williams testified that he did conduct
discovery prior to the guilty plea, stating that he exchanged
discovery with the Government at Petitioner's arraignment on July
18, 2007, as required by the local rules,[4] and that he shared that
discovery with Petitioner. (Doc. 147, att. 2 at 1). Williams
testified that he learned through discovery that the Government had
"_substantial_ relevant conduct" evidence against Petitioner,
affecting his potential exposure at sentencing, and that he shared
this information with Petitioner.[5] (_Id._) (emphasis added).
Williams further advised Petitioner that the Government had filed

---

4 Local Rule 16.13(b) of the United States District Court for the
Southern District of Alabama requires the Government to make initial
disclosures at the arraignment, including, among other things,
tendering to defendant all discoverable information within the scope
of Rule 16(a) of the Federal Rules of Criminal Procedure, Brady
material, Giglio material, any testifying informant's convictions,
and material within the scope of Federal Rule of Evidence 404(b).

5 It is unclear whether the Government disclosed a specific drug
quantity to counsel as part of this discovery. Williams' testimony
indicates only that he discovered and informed Petitioner that the
Government had "substantial" relevant conduct evidence against him
at that time. (Doc. 147, att. 2 at 1).

a notice pursuant to 21 U.S.C. § 851, which operated to enhance his statutory minimum under Count One to twenty years and under Count Eleven to ten years.  (Id.).

"[T]he proper standard for attorney performance is that of reasonably effective assistance."  Strickland, 466 U.S. at 687. To establish ineffective assistance of counsel, Petitioner "must show that counsel's representation fell below an objective standard of reasonableness," that is, that counsel was not "a reasonably competent attorney," and that his conduct was not "within the range of competence demanded of attorneys in criminal cases."  Id. at 687-88 (citations omitted).  Moreover, "[j]udicial scrutiny of counsel's performance must be highly deferential."  Id. at 689.

It is undisputed in this action that Williams exchanged discovery with the Government prior to Petitioner's guilty plea in compliance with the local rules.  Assuming that the Government even possessed relevant conduct evidence at that time indicating that Petitioner was accountable for 104 kilograms of cocaine, counsel made a reasonable effort to discover it and, thus, fulfilled his duty in that regard.

Furthermore, even assuming that counsel's efforts had been deficient with regard to pre-plea discovery of drug quantity evidence, Petitioner has failed to show any prejudice from that deficiency.  See id. at 692 ("any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.").  While Petitioner

argues that he would not have pled guilty if he had known that the Government's relevant conduct evidence was in excess of 100 kilograms of cocaine, as opposed to six kilograms as he believed, it is undisputed that, following his guilty plea, Petitioner entered into a Cooperation Agreement with the Government in which he admitted responsibility for 104 kilograms of cocaine. (Doc. 115, att. 1 at 4). Thus, Petitioner has failed to show that counsel's failure to discover this information prior to his guilty plea prejudiced him in any way. For each of these reasons, Petitioner is not entitled to relief on this basis.

> ## 2. Ineffective Assistance of Counsel in Advising Petitioner to Plead Guilty.

Petitioner also claims that his counsel was ineffective for advising him to plead guilty. (Doc. 142 at 7). The Court disagrees.

At the time that Petitioner pled guilty, the Government had overwhelming evidence of his guilt given that Petitioner had been arrested while selling cocaine to a confidential informant who was equipped with electronic monitoring devices. (Doc. 146 at 19-22; Doc. 93 at 10-11). In addition, as discussed above, the Government had informed Petitioner's counsel, who had informed Petitioner, that it intended to rely on the statutory minimum sentencing enhancement provisions of 21 U.S.C. §§ 841 and 851, which had the effect of raising the mandatory minimum from ten years to twenty years on Count One and from five years to ten years on Count Eleven. (Doc. 61). Counsel had also discovered and informed Petitioner that the Government had

"substantial" relevant conduct evidence against him which it intended to use at sentencing. (Doc. 147, att. 2 at 1). Based on these factors, counsel advised Petitioner to plead guilty and seek whatever sentencing benefits he could obtain from his cooperation. (Id. at 1-2). Under the circumstances, the incentive for Petitioner to plead guilty and seek a lesser sentence through cooperation with the Government was compelling whether Petitioner or his counsel believed he was being held accountable for six kilograms of cocaine or 104 kilograms of cocaine. Under either scenario, counsel's advice to Petitioner to plead guilty was reasonable.

Moreover, as discussed above, *after* Petitioner pled guilty and *after* he learned that the Government intended to hold him accountable for 104 kilograms of cocaine, he signed a Cooperation Agreement reaffirming that he was guilty of the offenses for which he had pled guilty and accepting full responsibility for 104 kilograms of cocaine. Thus, he cannot show that, had he known that the Government intended to hold him accountable for 104 kilograms of cocaine, he would never have pled guilty.[6] Because Petitioner has failed to

---

[6] The Court notes that Judge Steele also conducted a full and sufficient plea colloquy with Petitioner at his guilty plea hearing, as required by Federal Rule of Criminal Procedure 11, and specifically discussed with Petitioner the fact that the drug quantity for which he was to be held accountable was in dispute and would have to be resolved at the sentencing hearing. (Doc. 146 at 23). Petitioner stated that he understood, and he pled guilty. (Id.). Following the guilty plea hearing, Petitioner entered into the Cooperation Agreement with the Government expressly reaffirming his guilt and taking full responsibility for the 104 kilograms of cocaine of which he ostensibly was unaware when he pled guilty. (Doc. 147, att. 1 at 4). As such, Petitioner's argument that his guilty plea was

show that counsel's advice to plead guilty was deficient and that he suffered any prejudice from that advice, he is not entitled to relief on this basis.

### 3. Ineffective Assistance of Counsel Rendered Guilty Plea Involuntary and Unknowing.

Petitioner also claims that his guilty plea was rendered involuntary and unknowing by his counsel's ineffectiveness in failing to discover and inform him prior to the plea that the Government intended to hold him accountable for 104 kilograms of cocaine. Having found herein that counsel did not render ineffective assistance with regard to pre-plea discovery or for advising Petitioner to plead guilty, Petitioner's claim that his guilty plea was rendered involuntary thereby is without merit. For each of the reasons set forth above, Petitioner's habeas Claim Three is due to be denied.

C. Ineffective Assistance of Counsel in Advising Petitioner to Sign a Cooperation Agreement and Bad Faith by the Government Rendered the Cooperation Agreement Involuntary and Unknowing (Claim Five).

Petitioner asserts in Claim Five of his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 that his counsel's ineffectiveness in advising him to sign a Cooperation Agreement and the Government's bad faith in entering the Cooperation Agreement rendered the Cooperation Agreement involuntary and unknowing. (Doc.

---

involuntary and unknowing because he was unaware of the actual drug quantity for which he was being held responsible is completely without merit.

143 at 11-14).  The Court disagrees.

Specifically, as discussed above, Petitioner states that, on advice of counsel, following his guilty plea, he signed the Cooperation Agreement accepting responsibility for 104 kilograms of cocaine and agreeing to a two-level enhancement for possession of a firearm in exchange for the Government's agreement to seek a reduction in his sentence if he cooperated and provided substantial assistance on other cases.  (Id.).  According to Petitioner, however, the Government was acting in bad faith from the very beginning and never intended to seek assistance from him but only promised to do so in order to induce him to waive his right to challenge the drug quantity and firearm enhancement.[7]  (Id. at 12-14).  Petitioner's allegations are unsupported by the record.

As discussed above in relation to habeas Claim Three, at the time of his sentencing, Petitioner was facing a mandatory minimum sentence of twenty years on Count One alone because of the § 841 sentencing enhancement.  Thus, Petitioner had considerable incentive to cooperate with the Government and seek whatever possible sentencing reduction he could gain from that decision.  Once Petitioner signed the Cooperation Agreement and accepted responsibility for 104 kilograms of cocaine and possession of the firearm, the Government did not seek to enforce the twenty-year mandatory minimum sentencing enhancement under § 841; rather, the

---

[7] Petitioner does not claim that counsel was aware of any bad faith on the part of the Government.  (Doc. 143 at 12-13).

18

Government recommended, and the Court agreed, that Petitioner should be sentenced at the low end of the guidelines, which was 235 months (nineteen years and seven months). (Doc. 141 at 11). In addition, the Government agreed to provide Petitioner the opportunity to further reduce his sentence through a § 5K1.1 or Rule 35 reduction if he provided substantial assistance on other criminal cases. (Doc. 147, att. 1 at 6). Thus, counsel's advice to Petitioner to sign the Cooperation Agreement was reasonable under the circumstances, and Petitioner's ineffective assistance of counsel claim based on that advice is without merit.

Second, there is no evidence to support Petitioner's allegations of bad faith on the part of the Government with regard to the Cooperation Agreement. (Doc. 143 at 13). Petitioner acknowledges that the Government allowed him the opportunity to cooperate more than once prior to sentencing. (Id.). In fact, Petitioner testified at the evidentiary hearing conducted on November 30, 2010, that his counsel, Williams, successfully requested that sentencing be continued several times in order to give him the opportunity to cooperate. Further, Williams testified at the evidentiary hearing that Petitioner was interviewed by the Government both before sentencing and after sentencing to see what sort of information he might have that might result in substantial assistance to the Government. Following Petitioner's sentencing, Williams met with Petitioner and the Government in the Monroe County jail to provide Petitioner yet another opportunity to cooperate. Unfortunately,

19

the information that Petitioner provided was not useful to the
Government and, thus, did not result in a reduction in Petitioner's
sentence.

Under the Cooperation Agreement, the decision as to whether
Petitioner had provided "substantial assistance" in the
investigation or prosecution of another criminal offense warranting
a motion for a downward departure was a matter within the "sole
discretion" of the Government. (Doc. 115, att. 1 at 6). The mere
fact that the Government did not ultimately find Petitioner's
information useful and thus did not move for a reduction in his
sentence is not evidence of bad faith. Thus, Petitioner's claim
that the Government's bad faith rendered the Cooperation Agreement
involuntary is simply without merit. For each of these reasons,
Petitioner's habeas Claim Five is due to be denied.

D. <u>Ineffective Assistance of Counsel in Failing to Object to Drug
Quantity (Claim Two) and in Failing to Object to a Two-Level
Increase Based on Co-Defendant's Possession of a Firearm (Claim
Four)</u>.

In addition to Petitioner's claims above related to drug
quantity and the firearms enhancement, Petitioner also argues in
his Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C.
§ 2255 that his counsel was ineffective for failing to object at
sentencing to the drug quantity for which he was being held
accountable, *i.e.*, 104 kilograms of cocaine (Claim Two)[8] and for

_____

8 Petitioner's claims related to drug quantity overlap. To the
extent that Petitioner is claiming that his counsel was ineffective
for failing to object to him being sentenced to a drug quantity of

20

failing to object to the two-level increase for possession of a firearm (Claim Four). (Doc. 142 at 5, 8; Doc. 143 at 8, 10; Doc. 148 at 7, 10). However, Petitioner has waived these claims and, even if not waived, they are without merit.

First, in the Cooperation Agreement, Petitioner waived the right to appeal or collaterally challenge his sentence on any basis other than punishment in excess of the statutory maximum or in the event of a future retroactive amendment to the sentencing guidelines affecting Petitioner's sentence. (Doc. 115, att. 1 at 8). "It is well-settled that sentence-appeal waivers are valid if made knowingly and voluntarily." Williams v. U.S., 396 F.3d 1340, 1341 (11th Cir. 2005) (citing United States v. Bushert, 997 F.2d 1343, 1350-51 (11th Cir. 1993)). "For a sentence appeal waiver to be enforced, '[t]he government must show that either (1) the district court specifically questioned the defendant concerning the sentence appeal waiver during the Rule 11 colloquy, or (2) it is manifestly clear from the record that the defendant otherwise understood the full significance of the waiver.'" Brown v. U.S., 256 Fed. Appx. 258, 261 (11th Cir. 2007) (unpublished)[9] (quoting Bushert, 997 F.2d at 1351).

Because the Cooperation Agreement in this action was entered

_____

104 kilograms, that argument is addressed herein as habeas Claim Two.

[9] "Pursuant to Eleventh Circuit Rule 36-2, unpublished opinions are not considered binding precedent, but may be cited as persuasive authority." Lanier Constr., Inc. v. Carbone Props. of Mobile, LLC, 253 Fed. Appx. 861, 865 n.5 (11th Cir. 2007) (unpublished).

after Petitioner's guilty plea hearing, the Court did not question Petitioner about the sentence appeal waiver during the Rule 11 colloquy. However, the Court did inform Petitioner at his guilty plea hearing that he had the right to appeal his conviction and sentence. (Doc. 146 at 11-12). Further, at his sentencing hearing, Petitioner informed the Court that he was "trying to help [him]self" obtain a more lenient sentence by entering the Cooperation Agreement with the Government so that when he got out of prison he could "be a better man." (Doc. 141 at 9). There is absolutely no indication that Petitioner was entering the Cooperation Agreement involuntarily. (Id. at 3, 9). Even now Petitioner does not dispute that he understood that he was waiving his right to challenge his sentence on the basis of drug quantity and the firearms enhancement when he entered the Cooperation Agreement. Rather, his argument is simply that the Cooperation Agreement and waiver are invalid because the Government acted in bad faith, and his attorney should not have advised him to enter it. (Doc. 143 at 13-14). Having found in relation to habeas Claim Five that there is no evidence of bad faith on the part of the Government and that counsel's advice to enter the Cooperation Agreement was not deficient, that argument is without merit. Therefore, the Court finds that it is manifestly clear from the record that Petitioner understood the full significance of the waiver and that he knowingly waived his right to challenge the drug quantity and the firearms enhancement in order to "help [him]self" get the most lenient sentence possible. (Doc.

141 at 9).

"When a valid sentence-appeal waiver containing express language waiving the right to attack a sentence collaterally is entered into knowingly and voluntarily, it will be enforceable and serve to prevent a movant from collaterally attacking a sentence on the basis of ineffective assistance of counsel. Thompson v. U.S., 353 Fed. Appx. 234, 235 (11th Cir. 2009) (unpublished) (citing Williams v. U.S., 396 F.3d 1340, 1342 (11th Cir. 2005) ("every Circuit to have addressed the issue has held that a valid sentence-appeal waiver, entered into voluntarily and knowingly, pursuant to a plea agreement, precludes the defendant from attempting to attack, in a collateral proceeding, the sentence through a claim of ineffective assistance of counsel during sentencing."). In this action, Petitioner has simply disguised his otherwise waived sentencing claims as ineffective assistance of counsel claims, which is prohibited by Williams. Thus, habeas Claims Two and Four are waived and due to be denied on this basis.

Moreover, even if not waived, Petitioner's habeas Claims Two and Four are without merit. As discussed above, Petitioner signed the Cooperation Agreement with the Government admitting that he was accountable for 104 kilograms of cocaine and for possession of a firearm and waiving any future right to challenge to those sentencing factors. (Doc. 147, att. 1 at 4, 8). Thus, counsel had no basis upon which to object at sentencing to those factors, and Petitioner's claim that counsel was ineffective for failing to do so is without

23

merit.[10]  Accordingly, habeas Claims Two and Four are due to be denied
for this reason as well.

<u>CERTIFICATE OF APPEALABILITY</u>

Pursuant to Rule 11(a) of the Rules Governing § 2255 Proceedings,
the undersigned recommends that a certificate of appealability in
this case be denied.  28 U.S.C. foll. § 2255, Rule 11(a) ("The district
court must issue or deny a certificate of appealability when it enters
a final order adverse to the applicant.").  The habeas corpus statute
makes clear that an applicant is entitled to appeal a district court's
denial of his habeas corpus petition only where a circuit justice
or judge issues a certificate of appealability.  28 U.S.C. §
2253(c)(1).  A certificate of appealability may issue only where
"the applicant has made a substantial showing of the denial
of a constitutional right." 28 U.S.C. § 2253(c)(2).  Where a habeas
petition is being denied, in part, on procedural grounds without
reaching the merits of an underlying constitutional claim, "a COA
should issue [only] when the prisoner shows . . . that jurists of
reason would find it debatable whether the petition states a valid
claim of the denial of a constitutional right and that jurists of
reason would find it debatable whether the district court was correct
in its procedural ruling." <u>Slack v. McDaniel</u>, 529 U.S. 473, 484
(2000).  Where a habeas petition is being denied on the merits of

---

10 It should be noted that counsel did object at sentencing to the
firearms enhancement, and the Court found that the objection had
been waived by the Cooperation Agreement.  (Doc. 141 at 6).

an underlying constitutional claim, a certificate of appealability should issue only when the petitioner demonstrates "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. ("To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right, a demonstration that, under Barefoot [v. Estelle, 463 U.S. 880, 893 (1983)], includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further.") (internal quotation marks omitted); accord Miller-El v. Cockrell, 537 U.S. 322, 336 (2003).

    None of Petitioner's claims would warrant the issuance of a Certificate of Appealability.  As previously established, the waiver of appeal and collateral challenge to Petitioner's sentence addressed in Claims Two and Four was found to be valid; thus, a reasonable jurist could not conclude that this Court is in error in invoking that procedural bar with respect to Petitioner's ineffective assistance of counsel claims based on the drug quantity and firearms enhancement used to calculate his sentence.  See Slack, 529 U.S. at 484 ("Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further.").  In addition, reasonable jurists could not

debate whether the merits of any of Petitioner's claims should be resolved in a different manner or whether the issues deserve to proceed further. The recommendation that these claims be denied is based on the straightforward application of clear Circuit precedent, and no reasonable jurist could differ on the appropriate disposition of the claims on the record presented. It is thus recommended that the Court deny any request for a Certificate of Appealability.

<u>CONCLUSION</u>

For the foregoing reasons, it is recommended that Petitioner's § 2255 Motion to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody (Docs. 142, 143) be denied, that this action be dismissed, and that judgment be entered in favor of Respondent, the United States of America, and against Petitioner, Carlton Aaron Moseley. In addition, the undersigned Magistrate Judge is of the opinion that Petitioner is not entitled to issuance of a Certificate of Appealability. It is so recommended.

**MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS AND RESPONSIBILITIES FOLLOWING RECOMMENDATION, AND FINDINGS CONCERNING NEED FOR TRANSCRIPT**

1. ***Objection***. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the Magistrate Judge. *See* 28 U.S.C. § 636(b)(1)(C); *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988); *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. Unit B, 1982) (*en banc*). The procedure for challenging the findings and recommendations of the Magistrate Judge is set out in more detail

in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a
> magistrate judge in a dispositive matter, that is, a matter
> excepted by 28 U.S.C. § 636(b)(1)(A), by filing a
> 'Statement of Objection to Magistrate Judge's
> Recommendation' within ten days[15] after being served with
> a copy of the recommendation, unless a different time is
> established by order.  The statement of objection shall
> specify those portions of the recommendation to which
> objection is made and the basis for the objection.  The
> objecting party shall submit to the district judge, at
> the time of filing the objection, a brief setting forth
> the party's arguments that the magistrate judge's
> recommendation should be reviewed *de novo* and a different
> disposition made.  It is insufficient to submit only a
> copy of the original brief submitted to the magistrate
> judge, although a copy of the original brief may be
> submitted or referred to and incorporated into the brief
> in support of the objection.  Failure to submit a brief
> in support of the objection may be deemed an abandonment
> of the objection.

A magistrate judge's recommendation cannot be appealed to a
Court of Appeals; only the district judge's order or judgment can
be appealed.

2.    ***Transcript (applicable Where Proceedings Tape Recorded).***
Pursuant to 28 U.S.C. § 1915 and FED. R. CIV. P. 72(b), the Magistrate
Judge finds that the tapes and original records in this case are
adequate for purposes of review.  Any party planning to object to
this recommendation, but unable to pay the fee for a transcript,
is advised that a judicial determination that transcription is
necessary is required before the United States will pay the cost
of the transcript.

DONE this 22nd day of December, 2010.

s/Bert W. Milling, JR._____
UNITED STATES MAGISTRATE JUDGE

---

[15] Effective December 1, 2009, the time for filing written objections
was extended to "14 days after being served with a copy of the
recommended disposition[.]"  Fed. R. Civ. P. 72(b)(2).